### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          NO. CR 03-422 JP

ISIDRO PACHECO-ESPINOSA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

On April 9, 2003, Defendant Isidro Pacheco-Espinosa filed a Motion to Suppress Physical Evidence and Statements (Doc. No. 17).  Defendant argues that any statements and physical evidence, including the confiscated marijuana, cannot be used as evidence in his criminal trial because they were taken or seized after his illegal detention and arrest.  The Court held a hearing on the motion on July 1, 2003.  On July 7, 2003, Defendant filed a Supplement to Motion to Suppress Evidence (Doc. No. 32).  Having considered all the briefs, the supplement, and the evidence presented during the hearing, the Court concludes that Defendant's motion should be denied.

I.      **Factual Findings**

On December 7, 2002, at around 2:50 p.m., United States Border Patrol Agent David Scrivener was on roving patrol in a marked border patrol sedan driving in a southwesterly direction on New Mexico Highway 171, east of Interstate 25, near Truth or Consequences, New

Mexico.  Highway 171 leads from Truth or Consequences to Elephant Butte, New Mexico.

Agent Scrivener had worked as a Border Patrol agent for 2 ½ years and was assigned to the Truth

or Consequences area.  Agent Scrivener is familiar with the usual patterns of traffic on Highways

171, 181, 195, and Rock Canyon Road, which are roadways surrounding the Elephant Butte Lake

area.  Agent Scrivener is also familiar with the vehicles operated by local residents that use those

roadways.  Between October and April, the highways and roads in this area are primarily used by

local residents, as it is off season for the lake during the winter months.  In early December the

traffic on Rock Canyon Road is at a particularly low level.  Agent Scrivener estimated that only

three or four vehicles an hour travel on Rock Canyon Road in early December.  Additionally, in

Agent Scrivener's experience, these back highways and roads are frequently used by alien and

drug smugglers attempting to circumvent the immigration checkpoint located on Interstate 25

north of Truth or Consequences when the checkpoint is open and operating.  Agent Scrivener

stated that from about November 7, 2002, to December 7, 2002, there were roughly 10 to 11

illegal alien loads and three to five illegal narcotics loads intercepted on the back roadways

(Highways 171, 181, 195, and Rock Canyon Road) in the Elephant Butte area.

On December 7, 2002, the checkpoint north of Truth or Consequences was operational.

As a result, border patrol agents had information that the highways surrounding the checkpoint

were being used by alien and drug smugglers attempting to circumvent the checkpoint.

While Agent Scrivener was driving in a southwesterly direction on Highway 171, he

passed a gray 1992 Ford pickup truck traveling in the opposite direction on Highway 171.  The

point where Agent Scrivener initially encountered the truck was approximately 120 miles from the

Mexican border.  As the pickup truck passed Agent Scrivener, Agent Scrivener noticed that the

2

driver did not acknowledge his presence and had a dead stare on the road ahead of him.  The driver held the steering wheel rigidly with both hands.  The truck peaked Agent Scrivener's interest because it was the same make, model, and color of a truck from the Hatch, New Mexico area that had recently been used to smuggle eight illegal aliens.  Agent Scrivener turned around to follow the truck and requested a registration, stolen vehicle, and 72-hour lane check.  The checks revealed that the truck was registered to Oscar or Aurora Hinojosa from Socorro, New Mexico; the vehicle was not stolen; and the truck had crossed the border from the Republic of Mexico at the Port of Entry in Columbus, New Mexico, which is west of Interstate 25, at around 11:30 a.m. (Eastern Standard Time) the morning of December 7, 2002.  The gray pickup truck was not the same truck used for smuggling aliens in Hatch.

As Agent Scrivener followed the pickup truck, the truck made a left turn and headed north on Highway 195.  Agent Scrivener followed the truck until it made an abrupt turn into the Elephant Butte General Store and stopped by the gas pumps.  Agent Scrivener drove north on Highway 195 past the Elephant Butte General Store and stopped at a Diamond Shamrock gas station located at the intersection of Highway 195 and Rock Canyon Road, about a quarter of a mile beyond the general store. Agent Scrivener began putting gas in his car.

While Agent Scrivener finished fueling, he noticed that the truck began driving north on Highway 195 and then turned onto Rock Canyon Road.  Rock Canyon Road leads to Interstate 25 at exit 89 and then continues past Interstate 25 as New Mexico Highway 52 towards the town of Cuchillo and the Gila National Wilderness.  In order to try to pass the pickup truck on Rock Canyon Road, Agent Scrivener took Highway 195 to Interstate 25.  Agent Scrivener entered the

interstate at exit 83, drove north, exited Interstate 25 at exit 89, and headed southeast on Rock Canyon Road.

As Agent Scrivener drove on Rock Canyon Road, he again encountered the gray Ford pickup truck. Agent Scrivener passed the truck and for a second time noticed that the driver had a dead stare on his face, would not acknowledge the agent, and had the same rigid posture. Agent Scrivener then turned around and followed the pickup truck. Agent Scrivener observed that the truck was traveling at a speed of 35 miles per hour, 20 miles per hour below the posted speed limit of 55 miles per hour. The agent also saw that the truck appeared to be riding low. Agent Scrivener thought it unusual that someone traveling from Columbus to Socorro would take a route other than Interstate 25 because Interstate 25 is the shorter and faster route.

Based on all his observations, Agent Scrivener believed the pickup truck was attempting to circumvent the checkpoint on Interstate 25, so he decided to stop the truck to investigate if the truck was transporting illegal aliens. Agent Scrivener stopped the truck at the junction of Rock Canyon Road and Interstate 25 at exit 89. As Agent Scrivener approached the truck, he noticed two large burlap sacks in the bed of the truck. Agent Scrivener observed that the sacks had the outlines of brick-like objects. The sacks were similar to sacks from other cases in which marijuana had been seized.

Agent Scrivener approached the driver and asked the driver, identified as Defendant Isidro Pacheco-Espinosa, his citizenship. Defendant responded that he was a resident alien. As Defendant took his resident alien card out of his wallet, Agent Scrivener noticed that Defendant's hands were shaking. When asked about his destination, Defendant said he left Albuquerque that morning at 5:00 a.m. and drove three hours to fish with some friends. When asked who his

4

friends were, Defendant hesitated and said "Jesus" and "Castro."  When asked the last names of

his friends, Defendant paused and rolled his eyes to seek an answer.  When Agent Scrivener asked

Defendant if he owned the truck, Defendant told the agent that the truck belonged to his friend

"Jesus Jimenez," which was a different name than that given by dispatch as the registered owner.

As Agent Scrivener talked to Defendant, Defendant stuttered when answering questions.

Defendant also denied having crossed into Mexico and stated that the last time he went to Mexico

in the truck was several weeks ago.  When asked why Defendant chose this route, Defendant did

not have an answer.

Agent Scrivener then inquired as to what was in the two burlap sacks.  Defendant replied

that he did not know what was in them and that his friend gave them to him to drop off at an

Albuquerque store.  Consequently, Agent Scrivener notified the checkpoint that he needed a

drug-detection dog and asked Defendant if he could inspect the exterior of the truck with the dog.

Defendant hesitated but said yes.

At approximately 3:15 p.m. a drug-detection dog arrived and alerted to the burlap sacks in

the bed of the truck.  The agents opened the sacks and found several bundles of marijuana.  The

agents transported Defendant to the border patrol station.  Upon further search of Defendant's

truck, agents found another burlap sack and a small box containing more bundles of marijuana.

The total weight of the marijuana discovered in the truck was approximately 340 pounds.  After

agents advised Defendant of his *Miranda* rights, Defendant waived his rights and made

incriminating statements to the agents.

II.     **Discussion**

The Fourth Amendment applies to seizures of persons, including brief investigatory stops of vehicles.  United States v. Cortez, 449 U.S. 411, 417 (1981).  The Fourth Amendment constrains Border Patrol agents to "stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country."  United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975).  An officer is entitled to analyze the facts in light of his experience and training in detecting illegal entry and smuggling.  United States v. Monsisvais, 907 F.2d 987, 990 (10th Cir. 1990).  The Supreme Court has outlined a number of factors to be used in determining whether there is a reasonable suspicion to stop a vehicle in a border area: (1) the characteristics of the area in which the vehicle is stopped, (2) proximity to the border, (3) usual patterns of traffic on the particular road, (4) previous experience with alien traffic on the road, (5) information about recent illegal border crossings in the area; (6) the driver's behavior, such as attempts to evade officers; (7) aspects of the vehicle, such as concealed compartments; (8) appearance that the vehicle is heavily loaded; and (9) other relevant information.  Brignoni-Ponce, 422 U.S. at 884-85.

A court must look at the totality of the circumstances to determine whether an officer had a reasonable suspicion to justify a stop.  United States v. Arvizu, 534 U.S. 266, 274 (2002); Cortez, 449 U.S. at 417-18.  The Supreme Court expressly rejected any sort of "divide-and-conquer analysis."  Arvizu, 534 U.S. at 274.  As noted by the Tenth Circuit, "To be sure, an officer's specific articulable facts, when viewed in isolation, will often comport with general notions of innocent travel rather than criminal activity . . . the reasonable suspicion calculus turns

on whether the specific articulable facts, when viewed together through the lens of a reasonable

law enforcement officer, justified a brief roadside detention."  United States v. Lopez-Martinez,

25 F.3d 1481, 1484 (10th Cir. 1994).

Mindful of these principles, the Court will analyze the facts of this case within the

framework of Brignoni-Ponce.  First, the characteristics of the area in which Defendant was

stopped support a finding of reasonable suspicion.  Agent Scrivener initially passed Defendant as

Defendant was driving in a northerly direction on Highway 171 in the Elephant Butte, New

Mexico area.  After Agent Scrivener observed Defendant stop at the Elephant Butte General

Store, Defendant drove north on Highway 195 and then turned onto Rock Canyon Road.  Agent

Scrivener stopped Defendant on Rock Canyon Road at its intersection with Interstate 25.  Agent

Scrivener testified that Highways 171, 195, and Rock Canyon Road are frequently used by alien

and drug smugglers attempting to circumvent the immigration checkpoint located on Interstate 25

north of Truth or Consequences.  On the day of the incident in question, this checkpoint was

open.  Defendant's route of travel skirted the Interstate 25 checkpoint, and he was stopped where

Rock Canyon Road intersects with Interstate 25, north of the checkpoint.  Moreover, Agent

Scrivener estimated that the month before the incident in question there were roughly 10 to 11

illegal alien loads and three to five illegal narcotics loads intercepted on the back highways in the

Elephant Butte area.

As to the second factor, proximity to the border, the Government concedes that

Defendant was stopped more than 100 miles from the international border.  The location where

Agent Scrivener initially encountered Defendant was 120 miles from the Mexican border, and

Defendant was stopped a few miles north of that point.  Congress has authorized border patrol

7

agents to search vehicles "within a reasonable distance from any external boundary of the United

States." 8 U.S.C. § 1357(a)(3).  Current regulations interpret "reasonable distance" as 100 air

miles from the border.  8 C.F.R. § 287.1(a)(2).  The Tenth Circuit has nevertheless held that the

regulation does not foreclose searches beyond that limit.  See United States v. Leyba, 627 F.2d

1059 (10th Cir. 1990) (finding reasonable suspicion justifying stop of vehicle despite fact that stop

occurred 124 road miles from border).  Although in United States v. Venzor-Castillo, 991 F.2d

634 (10th Cir. 1993), the Tenth Circuit concluded that a stop that occurred more than 200 air

miles from the border was not within a reasonable distance of the border and thus was not

supported by reasonable suspicion, this case is distinguishable for a number of reasons.

       First, this Court determines that the approximately 120-mile distance in which Defendant

was stopped was a reasonable distance from the border.  See Leyba, 627 F.2d 1059 (10th Cir.

1980) (finding reasonable suspicion for stop 124 road miles from border); United States v. Garcia,

732 F.2d 1221, 1225 (5th Cir. 1984) (upholding stop 115 miles from border).  A stop just over a

hundred road miles from the border stands in marked contrast to the stop in Venzor-Castillo

where "the point of the stop was hundreds of miles beyond the border on a road bisecting a

multitude of entry points, including an adjoining state."  991 F.2d at 639.  Second, the United

States Border Patrol maintains a permanent checkpoint on Interstate 25 north of Truth or

Consequences, New Mexico.  Defendant was stopped near the checkpoint in an area that alien

and drug smugglers routinely use to circumvent the checkpoint.  Lastly, and perhaps most

importantly, Agent Scrivener conducted a 72-hour lane check that revealed that Defendant's truck

had crossed the Mexican border at the Port of Entry in Columbus earlier that morning.  One of

the vital elements of Brignoni-Ponce is whether the agent had reason to believe the vehicle had

recently crossed the border.  Garcia, 732 F.2d 1221, 1225 (5th Cir. 1984); United States v.

Melendez-Gonzalez, 727 F.2d 407, 411 (5th Cir. 1984).  As the Tenth Circuit noted, "Naturally,

if the officer has an articulable basis for believing that [a traveler's point of origin] was across an

international border, distance will have far less significance in judging the reasonableness of the

officer's decision."  Venzor-Castillo, 991 F.2d at 639.  Because Agent Scrivener had

particularized knowledge that Defendant had crossed the border earlier in the day, the distance

from the border is not a critical factor in the Brignoni-Ponce reasonable suspicion analysis.

Therefore, the evidence in this case supports the Court's finding that Defendant was stopped

within a reasonable distance from the border and that the 120-mile distance from the border does

not preclude a reasonable suspicion determination.

   The third Brignoni-Ponce factor, patterns of traffic on Rock Canyon Road, points in favor

of reasonable suspicion.  Agent Scrivener testified that the winter months between October and

April are off season for the lake, so that the back highways surrounding the lake are primarily

used by local residents.  In early December, traffic on Rock Canyon Road is particularly light with

only an estimated three or four vehicles an hour traveling on Rock Canyon Road, and those

vehicles are usually local residents.  Thus, it would have been unusual for the agent to encounter a

vehicle registered in Socorro on Rock Canyon Road in the middle of winter.

   As to the agent's previous experience with alien traffic on the road, Agent Scrivener had

been with the border patrol for 2 ½ years and had been assigned to the Truth or Consequences

area throughout that time.  Agent Scrivener testified that he had become familiar with the usual

patterns of traffic on the highways surrounding the Elephant Butte Lake area and with the

vehicles operated by local residents.  Agent Scrivener also testified that in the winter months

9

border patrol agents frequently encounter alien and drug smugglers on the back highways of the Elephant Butte Lake area as they attempt to circumvent the Interstate 25 border patrol checkpoint.  Agent Scrivener's experience provides some support for a reasonable suspicion determination.  See United States v. Barron-Cabrera, 119 F.3d 1454, 1461 (10th Cir. 1997) (determining that officer's 3 ½ years of experience as border patrol agent in area where defendant was stopped was sufficient to satisfy fourth prong of Brignoni-Ponce test).

In regard to the fifth factor, there is no evidence in the record that Agent Scrivener had specific information about recent illegal border crossings in the area.  However, because the border patrol checkpoint was open that day, agents had information that the highways surrounding the checkpoint were being used by alien and drug smugglers trying to avoid the checkpoint, a fact which is relevant to the reasonable suspicion analysis.

The sixth factor – the driver's behavior – also weighs in favor of a finding of reasonable suspicion.  When Agent Scrivener, who was driving a marked border patrol sedan, first passed Defendant, Agent Scrivener noticed that Defendant did not acknowledge his presence, held the steering wheel rigidly with both hands, and had a dead stare on the road ahead of him.  This behavior suggests Defendant was tense and uneasy.  See Arvizu, 534 U.S. at 275-76 (noting that driver's slowing down, stiffening of posture, and failure to acknowledge sighted law enforcement officer may be unusual on remote road).  Furthermore, shortly after Agent Scrivener turned around and began following Defendant, Defendant made an abrupt turn into the Elephant Butte General Store and stopped by the gas pumps.  Although stopping to get gas is not inherently suspicious, in this case the abrupt turn into the gas station shortly after being followed by a marked border patrol vehicle indicates nervousness and an attempt to avoid being followed by a

10

law enforcement officer.  When the agent passed Defendant again on Rock Canyon Road, Agent
Scrivener observed for a second time that Defendant had the same dead stare on the road, would
not acknowledge the agent, and gripped the steering wheel tightly.  Agent Scrivener turned
around to follow Defendant and noticed that Defendant was traveling at 35 miles per hour, 20
miles per hour below the posted speed limit.  As the Tenth Circuit has acknowledged, maintaining
a noticeably slow speed in the presence of law enforcement may indicate nervousness.  United
States v. Lopez-Martinez, 25 F.3d at 1486.

It is also suspicious that Defendant opted not to drive straight to Socorro on Interstate 25,
the shorter, faster route from the Columbus Port of Entry.  Instead, Defendant chose to drive on
New Mexico Highways 171 and 195 and on Rock Canyon Road, all of which are known to be
used as routes to circumvent the Truth or Consequences checkpoint.  See United States v.
Barbee, 968 F.2d 1026, 1029 (10th Cir. 1992) (noting that agent's discovery of driver along road
commonly used to avoid Truth or Consequences checkpoint weighs in favor of reasonable
suspicion).  Defendant's chosen route becomes even more suspicious when one considers that the
Columbus Port of Entry is far west of Interstate 25 and Defendant was stopped on the east side of
the interstate, indicating that at some point Defendant crossed Interstate 25 instead of turning
north onto the interstate, which would have been the shortest route to Socorro.  Defendant's
circuitous path that took him north of the open checkpoint strongly supports a finding of
reasonable suspicion justifying the stop.

The seventh factor, unusual aspects of the vehicle, is absent in this case.  Agent
Scrivener's description of the vehicle indicated nothing more than a plain gray pickup truck.
However, the eighth factor, appearance of the vehicle as heavily loaded, points to reasonable

suspicion.  Agent Scrivener testified that when he turned around and followed Defendant's truck on Rock Canyon Road, he observed that Defendant's truck appeared to be riding low, even though the agent could see only one occupant in the truck.

Finally, of substantial probative value is the fact that Agent Scrivener knew that Defendant's vehicle had passed through the Columbus Port of Entry into the United States from Mexico earlier in the day.  The Tenth Circuit has acknowledged,  "A fundamental factor supporting an investigatory border patrol stop based on reasonable suspicion is the likelihood that the subject vehicle has crossed the border." U.S. v. Doyle, 129 F.3d 1372, 1375 (10th Cir. 1997). The fact that Defendant had crossed the border earlier in the day is especially significant when combined with the facts that Defendant's truck was registered in Socorro and it was winter, because it demonstrates that Defendant was not likely a tourist visiting Elephant Butte Lake.

This Court recognizes that this is a close case and that each individual fact, when viewed in isolation, may be consistent with innocent, legitimate travel.  Nevertheless, the Supreme Court has expressly rejected any sort of "divide-and-conquer" analysis and instead required lower courts to look at the "totality of the circumstances." Arvizu, 534 U.S. at 273-74.  Based on all the above facts, when viewed through the lens of a reasonable law enforcement officer, the Court concludes that Agent Scrivener had sufficient reasonable articulable suspicion justifying his stop of Defendant's vehicle.  The information obtained by Agent Scrivener soon after the stop supported Defendant's subsequent arrest.  Accordingly, Defendant's motion to suppress should be denied.

12

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Physical Evidence

and Statements (Doc. No. 17) is DENIED.

_____

CHIEF UNITED STATES DISTRICT JUDGE

13